# 16-2361-cr

*To be Argued by*:
Anthony DiPietro, Esq.

In the
## United States Court of Appeals
### For the Second Circuit

**Docket No. 16-2361**

UNITED STATES OF AMERICA,

*Appellee,*

-vs-

CARMINE PERSICO,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF DEFENDANT-APPELLANT CARMINE PERSICO**

Anthony DiPietro, Esq.
Law Office of Anthony DiPietro
15 Chester Avenue
White Plains, NY 10601
(914) 948-3242

*Attorney for Carmine Persico*

On Brief:
Gianna M. Del Grippo
Juris Doctorate Candidate 2017, Pace University School of Law
Internship at Law Office of Anthony DiPietro

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......................................... iii

JURISDICTIONAL STATEMENT ....................................... 1

ISSUES PRESENTED FOR REVIEW .................................... 2

STANDARD OF REVIEW ............................................. 3

APPLICABLE RULE ................................................ 3

STATEMENT OF CASE .............................................. 3

STATEMENT OF FACTS ............................................. 6

A. The "Commission" Trial ...................................... 6

B. Sentencing Proceedings ...................................... 7

C. Direct Appeal ............................................... 9

D. Mr. Persico's Rule 35 Motion ............................... 11

E. The Distrcit Court's Denial of Mr. Persico's Rule 35 Motion ............................... 16

SUMMARY OF ARGUMENT ........................................... 18

ARGUMENT ...................................................... 21

I. THE COURT SHOULD CONSIDER THE MERITS OF MR. PERSICO'S CLAIM THAT HIS SENTENCE WAS IMPOSED IN AN ILLEGAL MANNER AND FIND THAT HE IS ENTITLED TO RELIEF PURSUANT TO FORMER RULE 35(A) BECAUSE THE GOVERNMENT SUBMITTED FALSE INFORMATION CONCERNING HIS PARTICIPATION IN UNCHARGED MURDERS AND WITHHELD MITIGATING *BRADY* EVIDENCE DURING HIS SENTENCING PROCEEDING ......................................... 21

A. Overview ................................................... 21

B. Mr.Persico's Motion Should Not be Time-Barred .............. 22

C. The Government's False Allegations and *Brady* Violations .. 25

D. Mr. Persico's Sentence was Imposed In an Illegal Manner .. 27

E. Mr. Persico is entitled to a New Sentencing Proceeding ... 31

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page3 of 48

II. THE COURT SHOULD FIND THAT MR. PERSICO'S SENTENCE IS ILLEGAL PURSUANT TO FORMER RULE 35(A), AS VIOLATING THE CONSTITUTION'S SUBSTANTIVE GUARANTEES BECAUSE HIS EXCESSIVE PUNISHMENT OF 100 YEARS' IMPRISONMENT WAS BASED UPON THE SENTENCING JUDGE'S CONSIDERATION OF FALSE AND INCOMPLETE INFORMATION RESULTING FROM THE GOVERNMENT'S UNCONSTITUTIONAL ACTIONS ..................... 33

A. Overview ........................................ 33

B. The Constitution's Substantive Guarantees Require that a Defendant's Sentence be Reasonable and Proportionate ..... 34

C. Mr. Persico's Sentence of 100 years' Imprisonment Violates the Constitution's Substantive Guarantees ................ 38

CONCLUSION ............................................... 41

CERTIFICATE OF COMPLIANCE ................................ 42

**TABLE OF AUTHORITIES**

**Cases:** **Page(s)**

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................2,35

*Daniels v. Uchtman*, 421 F.3d 490 (7th Cir. 2005) ..............24

*Dodge v. Bennett*, 335 F.2d 657 (1st Cir. 1964) ................23

*Donahue v. United States*, 634 F.3d 615 (1st Cir. 2011) ........19

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ......................36

*Fallen v. United States*, 378 U.S. 139 (1964) ..................22

*Gov't of V.I. v. Gereau*, 603 F.2d 438 (3d Cir. 1979) ..........23

*Hill v. United States*, 368 U.S. 424 (1962) ....................36

*Jones v. United States*, 135 S.Ct. 8 (2014) ....................37

*Koon v. United States*, 518 U.S. 81 (1996) .....................40

*Limone v. United States*, 497 F.Supp.2d 143 (D. Mass. 2007) ....19

*Lockett v. Ohio*, 438 U.S. 586 (1978) ..........................36

*McGee v. United States*, 462 F.2d 243 (2d Cir. 1972) ...........30

*Montgomery v. Louisiana*, 136 S.Ct. 718 (2016) .............36,37

*New York v. DeVecchio*, 468 F.Supp.2d 448 (E.D.N.Y. 2007) ......14

*People v. Devecchio*, 2007 N.Y. Misc. LEXIS 7827
(N.Y. Sup. Ct. 2007) .......................................15,19

*Slutzker v. Johnson*, 393 F.3d 373 (3d Cir. 2004) ..............24

*Stickler v. Green*, 527 U.S. 263 (1999) ........................24

*Townsend v. Burke*, 334 U.S. 736 (1948) ..................28,31,32

*United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001) ..........30

*United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977) ...........30

*United States v. Harris*, 558 F.2d 366 (7th Cir. 1977) .........30

*United States v. Johnson*, 988 F.2d 941 (9th Cir. 1993) ........36

*United States v. Lopez*, 26 F.3d 512 (5th Cir. 1994) ............3

*United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970) .........35

*United States v. Rojas*, 617 F.3d 669 (2d Cir. 2010) ............3

*United States v. Salerno*, 946 F.2d 172(2d. Cir. 1992) ..........5

*United States v. Salerno*, 868 F.2d 524
(2d Cir. 1989) ..................................4,6,7,9,10,16,30

*United States v. Salerno*, 493 U.S. 811 (1989) ..................4

*United States v. Slutsky*, 514 F.2d 1222 (2d Cir. 1975) .........3

*United States v. Stein*, 544 F.2d 96 (2d Cir. 1976) ............32

*Warren v. United States*, 358 F.2d 527 (D.C. Cir. 1965) ........23

*Williams v. New York*, 337 U.S. 241 (1949) .....................40

**Statute(s):**

18 U.S.C. § 3742(a) ...........................................1

18 U.S.C. § 1962(d) ...........................................4

18 U.S.C. § 1962(c) ...........................................4

18 U.S.C. § 1951(a) ...........................................4

18 U.S.C. § 2 (1982) ..........................................4

28 U.S.C. § 1291 ..............................................1

28 U.S.C. § 1294(1) ...........................................1

28 U.S.C. § 2255 ..............................................5

29 U.S.C. § 186(b)(1) .........................................4

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page6 of 48

**Rules:**

Fed. R. Crim. P. 35(a) .......................................3

Fed. R. Crim. P. 2 ..........................................24

**JURISDICTIONAL STATEMENT**

Appellant Carmine Persico appeals from a Memorandum and Order (Appendix at 2-25(hereinafter "A")), entered June 24, 2016, denying his motion for sentence correction pursuant to the pre-November 1, 1987 version of Rule 35 of the Federal Rules of Criminal Procedure.

The district court had jurisdiction to adjudicate Mr. Persico's motion pursuant to former Rule 35 of the Federal Rules of Criminal Procedure. This Court has jurisdiction to review the district court's decision under 28 U.S.C. §§ 1291 and 1294(1), and 18 U.S.C. § 3742(a).

A timely notice of appeal was filed on July 1, 2016.(A.1.).

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page8 of 48

**ISSUES PRESENTED FOR REVIEW**

This appeal presents the following questions of constitutional significance and considerable importance:

1) Whether Mr. Persico's sentence was imposed in an illegal manner because of the Government's submission of false information concerning his participation in uncharged murders and its withholding of mitigating evidence whose disclosure was required under *Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny?

2) Whether Mr. Persico's sentence of 100 years' imprisonment is illegal as violating the Constitution's substantive guarantees because such punishment was imposed without consideration of mitigating factors and based upon a false account of Mr. Persico's criminal history?

**STANDARD OF REVIEW**

The district court's conclusions of law and interpretation of the Federal Rules of Criminal Procedure are subject to *de novo* review. *United States v. Rojas*, 617 F.3d 669, 677 (2d Cir. 2010). The district court's decision to correct a sentence pursuant to former Rule 35 of the Federal Rules of Criminal Procedure is subject to review for abuse of discretion. *United States v. Slutsky*, 514 F.2d 1222, 1226 (2d Cir. 1975).

**APPLICABLE RULE**

Former Fed. R. Crim. P. 35(a), which applies to pre-guideline cases, provides that:

> The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time [120 days] provided herein for the reduction of sentence.

*United States v. Lopez*, 26 F.3d 512, 517 n. 6 (5th Cir. 1994)

**STATEMENT OF THE CASE**

On June 25, 1985, the Government filed a multi-count indictment alleging that Mr. Persico was a member of the "Mafia's Commission" and engaged in racketeering acts of extortion and labor bribery (*United States v. Salerno*, et al., 85 Cr. 139).

The indictment alleged that Mr. Persico and all of his co-defendants except Bruno Indelicato, were involved in an extortion and labor bribery operation known as the "Club." The indictment also alleged that two of Mr. Persico's co-defendants, Anthony

Corallo and Salvatore Santoro, participated in a loansharking conspiracy, and that co-defendant Indelicato was involved in the murder of Carmine Galante and his two associates on July 12, 1979.[1]

On November 19, 1986, Mr. Persico was convicted of (1) RICO conspiracy in violation of 18 U.S.C. § 1962(d) (1982); (2) substantive RICO acts, in violation of 18 U.S.C. § 1962(c) (1982); (3) conspiracy to commit extortion and twelve counts of extortion or attempted extortion, in violation of 18 U.S.C. § 1951(a) (1982); and (4) aiding and abetting six labor bribery violations, in violation of 29 U.S.C. § 186(b)(1)(1986) and 18 U.S.C. § 2 (1982).

On January 13, 1987, the district court (Hon. Richard Owen (U.S.D.J.,S.D.N.Y)) sentenced Mr. Persico to 100 years' imprisonment, imposing consecutive twenty-year terms of imprisonment for Count 1 (RICO conspiracy), Count 2 (substantive RICO), Count 4 (extortion), Count 12 (extortion), and Count 14 (extortion).

On January 31, 1989, the Second Circuit denied Mr. Persico's direct appeal challenging his conviction and sentence. *United States v. Salerno*, 868 F.2d 524 (2d Cir. 1989). Thereafter, the Supreme Court denied Mr. Persico's petition for writ of certiorari. *United States v. Salerno*, 493 U.S. 811 (1989).

---

[1] Indelicato was the only defendant charged with these murders as predicate acts in the RICO counts.

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page11 of 48

On April 16, 1991, Mr. Persico's petition to vacate his conviction pursuant to 28 U.S.C. § 2255 was denied by the district court. The Second Circuit later affirmed the district court's decision. *United States v. Salerno*, 946 F.2d 172, 180 (2d. Cir. 1992).

On July 13, 2015, Mr. Persico filed a motion pursuant to former Federal Rule 35(a) challenging his sentence of 100 years' of imprisonment (*United States v. Salerno*, 85-cr-139 (KTD) (Doc No. 359)). On September 8, 2015, the Government filed a memorandum of law in opposition. On September 16, 2015, Mr. Persico submitted a reply (*United States v. Salerno*, 85-cr-139 (KTD) (Doc No. 363)). On March 15, 2016, Mr. Persico also filed a letter requesting a status conference based upon his finding of additional *Brady* materials during the pendency of his motion(*United States v. Salerno*, 85-cr-139 (KTD) (Doc No. 364)).

On June 24, 2016, the district court (Hon. Kevin T. Duffy (U.S.D.J., S.D.N.Y.)) denied Mr. Persico's motion and his request for a conference (*United States v. Salerno*, 85-cr-139 (KTD) (Doc No. 365) (A. 2-25)). The district court decided that Mr. Persico's sentence was not illegal and "prudential considerations" supported a summary denial of his claims.

It is from this final order that Mr. Persico appeals to the United States Court of Appeals for the Second Circuit.

## STATEMENT OF FACTS

### A. The "Commission" Trial

At trial, the Government alleged that Mr. Persico was a member of a RICO enterprise known as the "Commission," which was led by the "bosses" of the "Mafia's five families." The Government claimed that Mr. Persico served as the "boss" of the Colombo family and a member of the "Commission" from 1972 until 1985.[2]

The Government presented the testimony of cooperating witness Joseph Cantulopo--who was not a member of the "Mafia"--to establish that Mr. Persico became the "boss" of the Colombo family in 1972. Tr. 930-933, 935, 1123. Cantulopo testified that "the wheel ha[d] turned, the Colombo boys [were] on the bottom now and the Persicos [were] on the top." Tr. at 930.

The Government also alleged that Mr. Persico and his co-defendants utilized the "Commission" to engage in an extortion and labor bribery operation known as the "Club," which was allegedly a cooperative venture among the "Mafia Families" that "allow[ed] only certain construction companies as the 'Commission' approved to be permitted to take concrete construction jobs worth more than two million dollars in New York City." *Salerno*, 868 F.2d at 529. The Government claimed that certain construction companies were

[2] The Government claimed that "the 'Commission' was dominated by four men: Anthony Salerno (Undisputed Boss of the Genovese Family); Paul Castellano (Boss of the Gambino Family); Anthony Carallo (Boss of the Luchese Family); and Carmine Persico (Boss of the Colombo Family)."*See* Gov't Sent. Memo at 6 (A.34).

required to follow the rules set by the "Club" and "any contractor taking a concrete job worth more than two million dollars would be required to pay the 'Commission' two percent of the construction contract price." *Id.*

In addition, the Government alleged that Mr. Persico and his co-defendants utilized the "Commission" to resolve a leadership dispute within the Bonanno family concerning whether Carmine Galante or Philip Rastelli was the family's official "boss." The Government claimed that the "Commission" ultimately decided that Rastelli was the official "boss" and casted a vote as to whether Galante should be murdered for his subversive behavior. The Government contended that a majority of the "Commission's" members voted in favor of Galante being murdered.

**B. <u>Sentencing Proceedings</u>**

Prior to sentencing, the Government filed a memorandum requesting that Mr. Persico be sentenced to life imprisonment. *See* Gov't Sent. Memo at 50-51 (A.71-78) (The Government stated, a "symbolic dimension of sentencing suggests that there is value in imposing prison terms that these defendants will not be physically capable of completing."). The Government suggested that the severity of Mr. Persico's sentence should not only reflect punishment for his "predatory and lawless career, but also to send a message to other members of La Cosa Nostra and those contemplating membership...."*Id.* at 1-2 (A.29-30).

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page14 of 48

The Government also claimed that Mr. Persico's alleged leadership of the Colombo family since 1972 and participation in several uncharged murders were aggravating factors warranting an enhanced punishment. *Id* at 8, 19-25 (A.36,47-53). The Government contended that the sentencing judge should consider Mr. Persico's participation in the murders of Carmine Galante and others, including Mary Bari and Thomas Spero. *Id.* at 23 (A.51).

In advocating its sentencing position, the Government also submitted a memo to the U.S. Dept. of Probation that detailed its "version of the offense." *See* Gov't PSI Memo at 17-30 (A.102-115) The Government's memo contained the allegation that Mr. Persico was the "boss" of the Colombo family since 1972, and that the "Commission" had sanctioned several murders, including the killing of Galante in 1979. *Id.* at 21, 26-29 (A.106,111-114). These allegations were incorporated into the Presentence Investigation (PSI) that was provided to the sentencing judge as an addendum to each defendant's Presentence Report (PSR). *See* PSI at 6-7 (A.91-92).

On January 13, 1987, the district court held a hearing to conduct Mr. Persico's sentencing. At the hearing, the district court told the parties that it was not considering the Government's sentencing memorandum. Sent. Tr. at 14 (A.129). Nonetheless, the district court did not expressly reject the findings contained in the PSI, which included the Government's allegation that the

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page15 of 48

"Commission" was responsible for several murders. *See* PSI at 6-7 (A.91-92)(The "Commission" authorized the murder of Carmine Galante and "certain other murders.").

In addressing Mr. Persico, the court stated that he had profited from "being an upper member of this echelon, on the board of directors that lives, succeeds on murder, violence..." Sent Tr. at 24-25 (A.139-140). The court also stated that Mr. Persico was a "Commission member either up there or by proxy, using its services," and "[a]ccording to [cooperating witness Fred] DeChristopher, [he] had sanctioned the use of killing for appropriate circumstances, although in this case of Mr. Galante [he] apparently voted against it." *Id.* at 24 (A. 139).

The court sentenced Mr. Persico to a term of 100 years' imprisonment. After imposing the sentence, the court recalled Mr. Persico to the courtroom because it forgot to ask him if he had any objections to the PSR. *Id.* 27 (A.142). Mr. Persico told the Court that he objected "to the bulk" of the PSR. *Id.* at 28 (A.143).

**C. Direct Appeal**

On January 31, 1989, the Second Circuit affirmed both Mr. Persico's conviction and sentence. The Court held that there was sufficient evidence proving the "Club's" extortion operation and that the "Commission" required all "Club" members to pay a two percent tribute. *Salerno*, 868 F.2d at 530-531.

The Court also held that "there was adequate evidence to support the jury's determination that the Galante murder occurred 'in the conduct of [the 'Commission's'] affairs.'" *Id.* at 533-534 (noting that "the Commission had taken a vote on the matter [Galante's murder]" in light of its "exclusive prerogative to approve any murders of family bosses.")

Also, the Court found that Mr. Persico and his co-defendants' sentences of 100 years' imprisonment did not violate the Eighth Amendment, nor was such punishment improperly mechanistic or uniform. The Court rejected the defendants claim "that Judge Owen relied so heavily on abstract considerations of deterrence and so little on considerations of individual circumstances as to amount to an abuse of his wide discretion…."*Id.*

In dissent, Hon. Judge Myron H. Bright found that adequate proof had not existed to connect the Galante murder to the "Commission." Judge Bright explained that the Government's proof rested upon nothing more than an analogy to the movie, "The Godfather," and "a movie script does not constitute the kind of proof required to sentence men to prison for one hundred years." *Id.* at 545-546.

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page17 of 48

**D. Mr. Persico's Rule 35 Motion**

On July 13, 2015, Mr. Persico filed a motion pursuant to former Rule 35(a) arguing that his sentence was illegal because it was (1) substantively unreasonable in violation of the Sixth Amendment; (2) enhanced as a result of factual inaccuracies in violation of the Fifth Amendment's Due Process Clause; and (3) constitutionally unlawful due to the Government's failure to disclose mitigating evidence pursuant to its *Brady* obligation.

Mr. Persico's motion was supported by his recent finding that the Government failed to disclose numerous pieces of *Brady* evidence. This evidence demonstrated the falsity of the murder accusations that served as the predicate for Mr. Persico's de facto 100 year sentence, and established that he was neither the "boss" of the Colombo family, nor a member of the "Commission" from 1972 to 1985. (A.206-276).

The Government deliberately withheld from Mr. Persico's defense, numerous FBI reports proving that other individuals acted as the "boss" of the Colombo family and as a member of the "Commission" when Carmine Galante was murdered in 1979. *See, e.g.*, FBI Report, dated 3/9/1982 (A.273) ("The source advised that the former Colombo family boss, Thomas Di Bella, who was the boss of the family prior to 1981..."); FBI Report, dated 8/26/1980 (A.274) (NY 3461-TE advised "that the following is a current breakdown of the Colombo Family structure: Boss Thomas DiBella").

Among the Government's withholdings, were records proving that at least four FBI sources reported that Thomas Di Bella was appointed as the "boss" of the Colombo family by the "Commission" through its leader Carlo Gambino:

- On June 4, 1973, NY T-1 advised that Thomas Di Bella has been designated permanent new Boss of the Colombo La Cosa Nostra (LCN) Family by Carlo Gambino.
- On July 12, 1973, NY T-2 confirmed the above.
- On August 7, 1973, NY T-3 advised that Thomas Di Bella was still Boss of the Colombo LCN Family.

FBI Report, dated 8/22/1973 (A.235-236).

***

- On June 7, 1974, NY T-2 advised that one of the reasons Thomas Di Bella was made "boss" of the Colombo Family was because of his close friendship with Carlo Gambino. Gambino had threatened to take over the entire Family if a boss was appointed who he found unsuitable.

- On March 14, 1974, NY T-4 advised that Thomas Di Bella was firmly established as boss of the Colombo family.

FBI Report, dated 7/26/1974 (A.240).

The Government also suppressed information that Mr. Persico was not an active or influential member of the Colombo family due to his incarceration in the 1970s. *See, e.g.*, FBI Report, dated 1/8/1974 (A.238)("On September 13, 1973, NY T-2 advised that Thomas Di Bella is consolidating his power as the true boss of the Joseph Colombo La Cosa Nostra (LCN)" and "it has become apparent that Carmine Persico cannot control the family from his jail cell in

the view of his brother's, Alphonse Persico's, ineffectiveness"); FBI Report, dated 3/7/74 (A.247) ("A couple of months ago Yackovelli sent word to Persico that [ ]. Yackovelli told Persico that he [Yackovelli] is boss and when he needs things, people are to respond"); US Gov't Memorandum, dated 11/4/74 (A.249) ("The word on the street is that the Persico faction is 'out' in the Colombo power circles and that Joe Brancato appears to be the low key figure the Family has been seeking as a leader....").

Moreover, the Government suppressed information that Mr. Persico did not have the authority in the 1970s to authorize or sanction murder on behalf of the Colombo family. Alleged members of the Colombo family neither sought nor requested his authorization.[3] *See* FBI Report, dated 3/1/1975 (A.254)("On 8/12/74,[ ]advised that Tony Peraino is in contact with incarcerated Colombo Boss, Thomas Di Bella, and is attempting to get Di Bella's approval to 'wack out'[ ]"); FBI Report, dated 3/1/1975 (A.259) ("Source advised further that George Tropiano was attempting to get approval from Acting Boss Joe Brancato to have a 'witness' hit"); US Gov't Memorandum, dated 10/14/75 (A.265) (reporting that Thomas Di Bella is the boss of the Colombo family); FBI Report, dated 1/21/1977 (A.

[3] The Government also suppressed reports proving that other individuals [not Mr. Persico] served as "acting boss" of the Colombo family whenever Di Bella was unavailable. *See e.g.*, FBI Report, dated 8/30/74 (A.252) (Joseph Brancato is acting boss for Thomas Di Bella); FBI Report, dated 3/1/75 (A.262)(Joseph Brancato is acting boss in place of Di Bella, while the latter is incarcerated).

271-272) (reporting that Thomas Di Bella is the boss of the Colombo family, and Carmine Persico is a "capodecina"[incarcerated] who ranked at the bottom of the Colombo family hierarchy).

The Government also withheld evidence showing that it was not until 1980 that the "Commission" requested that Thomas Di Bella step down as "boss" of the Colombo family. FBI Report, dated 11/5/1980 (A.275). This evidence is significant, because it proves that Mr. Persico was not a member of the "Commission" through November 5, 1980, and as a result, innocent of participating in the murder of Carmine Galante that occurred in 1979.

Additional undisclosed reports also revealed that Mr. Persico did not commit the other uncharged murders the Government alleged during his sentencing. For example, the Government failed to disclose that it had received information proving that Mr. Persico did not participate in the murders of Mary Bari and Thomas Spero. *See* FBI Memorandum, dated 10/8/1980 (A.280) (stating "that the hits on Ralph and Shortie Spero (sic) were carried out by Genovese member Jerry Pappa (sic), as a result of extensive junk deals with Ralph Spero"); *New York v. DeVecchio*, 468 F.Supp.2d 448, 450 (E.D.N.Y. 2007) (On March 23, 2006, a grand jury indicted FBI agent DeVecchio on four counts of second-degree intentional murder, which included the murder of Mary Bari).

The Government further suppressed information from an FBI source which stated that when the murder of Gambino "boss" Paul

Castellano was committed, Mr. Persico "neither approved nor disapproved of the hit," thus disproving its theory that either Mr. Persico was a member of the "Commission" or that the "Commission's" approval is required before the killing of another Mafia "boss" occurs. *See* FBI Report, dated 12/18/1985 (A.278).

Finally, the Government concealed the fact that it had obtained its sentencing information from unreliable sources. The Government failed to disclose that it learned of Mr. Persico's involvement in uncharged murders from FBI informant, Gregory Scarpa, Sr.[4] (A.290-295). In addition, the Government concealed the fact that the sentencing information provided by FBI Agent Joseph Pistone was unreliable because he had participated in undisclosed acts of violence, extortion, obstruction of justice, hijackings, and a conspiracy to murder Bruno Indelicato.[5]

[4] Gregory Scarpa, Sr., was a "top echelon" informant, who committed numerous acts of violence and murder in which his FBI handlers were involved. *People v. DeVecchio*, 2007 N.Y. Misc. LEXIS 7827, *3-4, 6 (N.Y. Sup. Ct. 2007) ("[T]he FBI shield[ed] Scarpa from prosecution for his own crimes, [and] [] actively recruited him to participate in crimes under their direction." The FBI "was willing, despite its own formal regulations to the contrary, to make their own deal with the devil. They gave [Gregory] Scarpa [a known serial killer] virtual immunity for close to 15 years in return for information, true and false, he willingly supplied.").

[5] *See* Joseph D. Pistone and Charles Brandt, *Donnie Brasco: Unfinished Business* (2008) (Pistone admitting, "I was guilty of once conspiring to murder Bruno [Indelicato], and committed an overt act in furtherance of such plot...If Bruno's there, he's gone. If I have to put a bullet in his head...").

**E. The District Court's Denial of Mr. Persico's Rule 35 Motion**

On June 24, 2016, the district court denied Mr. Persico's Rule 35 motion. *See* Memo & Order (A.2-25). The district court held that Mr. Persico's motion failed to demonstrate a basis for relief under former Rule 35 (a), as well as finding time-barred his claim that his sentence was imposed in an illegal manner.

The court found that a substantive reasonableness review was inapplicable, because the offenses for which Mr. Persico was convicted pre-date the Sentencing Guidelines. *Id.* at 12-13 (A.13-14). The court held that a pre-guideline sentence could only be altered if the petitioner could prove that the sentencing judge considered improper factors in determining punishment. *Id.* at 13-15 (A.14-16). The court concluded, however, that the sentencing judge did not consider any improper factors, including accusations of his participation in the murder of Carmine Galante and others.[6] *Id.*

The court also decided that Mr. Persico's claim that the sentencing judge considered false and incomplete information was untimely because it was not brought within 120 days after his sentencing. The court further held that, even if it would consider Mr. Persico's claim as timely, the sentencing court's assertion

[6] The district court's finding is unreasonable because the "law of the case" dictates that the sentencing judge considered the Galante murder. *See United States v. Salerno*, 868 F.2d 524 (2d Cir. 1989).

that it did not rely upon the Government's sentencing memorandum was dispositive of the issue.[7] *Id.* at 17-18 (A.19-20).

Furthermore, the court held that Mr. Persico's *Brady* claims could not serve as a basis for relief under Rule 35(a), because his "*Brady* claims do not concern the legality of [his] sentence" and there was "no basis to reopen Persico's conviction to address the merits of his *Brady* claims." *Id.* at 20 (A.21).

Lastly, the court also found that the Government's withholding of *Brady* evidence concerning favorable witnesses was not a basis for sentencing relief. The court stated that it could not address such a claim under Rule 35(a) because it concerns "alleged violations which are not disclosed by the record and which occurred, if at all, prior to sentencing." Order at 21 (A.22). Nonetheless, the court stated that, even if it were to consider this claim, Mr. Persico failed to make a plausible showing that the undisclosed "witnesses' testimony would have been material and favorable" to his defense. *Id.*

The court concluded that the Government had "no *Brady* obligation to disclose documents that were part of the FBI's investigatory work and contained 'preliminary, challenged, or speculative information,'" *Id.* at 23 (A.24), even though the

[7] However, the district court neglected to address the fact that the disputed allegation concerning the "Commission's" involvement in several uncharged murders was incorporated into the PSR, which was considered by the sentencing judge. *See* PSI at 6-7(A.91-92).

district court did not conduct an inquiry into the substance of the suppressed records or ascertain the witnesses' identities related thereto. *Id.*

## SUMMARY OF ARGUMENT

In 1987, Mr. Persico was sentenced to 100 years' imprisonment because of the sentencing court's consideration of false information concerning his leadership role in the Colombo family and participation in uncharged acts of murder and violence.

In relation to Mr. Persico's sentencing, the Government argued for the court to consider false information concerning Mr. Persico's criminal history, while it deliberately withheld *Brady* evidence demonstrating the falsity of its accusations, including its claim that he was the "boss" of the Colombo family and a member of the "Commission" when Carmine Galante was murdered in 1979.

The Government consciously disregarded its *Brady* obligation during the sentencing phase of Mr. Persico's case by withholding numerous pieces of information obtained by the FBI, including the case agent, which would mitigate Mr. Persico's culpability. At the time of Mr. Persico's sentencing, the Government possessed, but deliberately failed to disclose, evidence proving that Thomas Di Bella had been appointed "boss" of the Colombo family in the 1970s, and that the "Commission" did not seek his removal until 1980.

The Government was thus well aware that Mr. Persico was not in a position to authorize the murders which it accused him of

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page25 of 48

sanctioning, and that others were in fact responsible for these offenses. Nonetheless, the Government proceeded to prosecute Mr. Persico's at sentencing with respect only to his name, leaving its oath to support the Constitution second to its courtroom success.[8]

As a result of the Government's unconstitutional actions, Mr. Persico could not fairly challenge the Government's request that he be sentenced to serve the rest of his life in prison. The sentencing court relied upon the Government's unsupported and false allegations regarding Mr. Persico's criminal history as shown by the sentencing court's statements, by the PSR the sentencing court reviewed, and by the Second Circuit in its review of the sentence.

Had the government fulfilled its constitutional obligation to disclose *Brady* evidence, Mr. Persico would have been in position to rebut allegations contained in the Government's sentencing memorandum and the Pre-Sentence Report, and recited by the judge at sentencing. Cumulatively, the withheld *Brady* evidence renders Mr. Persico's sentence unsupported in fact, and undermines the veracity

[8] Mr. Persico's case exemplifies the Government's history of malfeasance when prosecuting alleged members of the "Mafia." *See, e.g.*, *Donahue v. United States*, 634 F.3d 615, 617 (1st Cir. Mass. 2011)(finding that the FBI's misconduct was "reprehensible" and triggered by its "ardent desire to bring down the Mafia"--leading it to look the other way as its informants committed murder); *Limone v. United States*, 497 F.Supp.2d 143 (D. Mass. 2007) (In its campaign against the "Mafia," the FBI allowed its informant to commit perjury in plaintiffs' murder trial);*People v. DeVecchio*, 2007 N.Y. Misc. LEXIS 7827, *6 (N.Y. Sup. Ct. 2007)(the "FBI engaged in a policy of self-deception, not wanting to know the true facts about [the] informant-murderer whom they chose to employ").

of each aggravating factor considered by the sentencing judge.

Under these circumstances, both the sentencing process and punishment imposed upon Mr. Persico were violative of the Constitution's procedural and substantive guarantees. Mr. Persico's punishment of 100 years' imprisonment was imposed in an illegal manner and substantively unreasonable because the Government's *Brady* suppressions and presentation of false information influenced the sentencing judge's determination of Mr. Persico's punishment.

For the past thirty-years, the Government continued to suppress this *Brady* evidence from Mr. Persico's defense, which prohibited him from previously challenging the constitutionality of his sentence. Any objection that Mr. Persico's claims are untimely under former Rule 35 is misplaced because case law from the Supreme Court, the Second Circuit, and other Circuits holds that a petitioner's untimely filing of a Rule 35 motion or other process must be excused when the delay in filing was due to the government's action. This case law is in accord with the overarching purpose of the Federal Rules of Criminal Procedure, which is to ensure that every case is adjudicated in a just and fair manner.

Accordingly, Mr. Persico is entitled to relief under former Rule 35(a).

## ARGUMENT

### I. THE COURT SHOULD CONSIDER THE MERITS OF MR. PERSICO'S CLAIM THAT HIS SENTENCE WAS IMPOSED IN AN ILLEGAL MANNER AND FIND THAT HE IS ENTITLED TO RELIEF PURSUANT TO FORMER RULE 35(A) BECAUSE THE GOVERNMENT SUBMITTED FALSE INFORMATION CONCERNING HIS PARTICIPATION IN UNCHARGED MURDERS AND WITHHELD MITIGATING *BRADY* EVIDENCE DURING HIS SENTENCING PROCEEDING.

#### A. Overview

The Government's neglect of its *Brady* obligation interfered with Mr. Persico's ability to (1) sooner remedy the illegality of his sentence under former Rule 35(a); (2) present mitigating evidence at the time of sentencing; and (3) reveal the falsity of the Government's accusations concerning his criminal history.

Mr. Persico's motion pursuant to former Rule 35(a) should be considered on the merits, because he was denied an opportunity to previously file for relief due to the Government's unconstitutional actions.[9] Until recently, Mr. Persico was unable to bring such motion because he neither knew, nor could fairly argue that his sentence was illegal under former Rule 35(a) until he discovered through his own investigations the *Brady* evidence that had been suppressed by the Government.[10]

---

[9] Mr. Persico made several requests for records pursuant to the Freedom of Information Act (FOIA), which led to the production of records demonstrating that *Brady* evidence had been suppressed. *See* FOIA Correspondences at A.195-205.

[10] The record is devoid of any proof that Mr. Persico had any reason to believe at the time of sentencing that the Government had possessed and withheld numerous pieces of *Brady* evidence.

The substance of the *Brady* evidence suppressed by the Government has now provided Mr. Persico a basis to argue for the mitigation of his punishment by disproving the Government's accusations that he participated in uncharged murders, including the killing of Carmine Galante.

**B. Mr. Persico's Motion Should Not be Time-Barred**

The time limit set forth under former Rule 35(a) should not be rigidly applied when a petitioner's delay in filing is due to the Government's actions. This is especially true when the Government suppresses information that a petitioner was constitutionally entitled to discover, and such information establishes the relief sought by the petitioner.

The Supreme Court explained that time limits set forth within the Federal Rules of Criminal Procedure must be applied in a manner that serves the overarching purpose of the Rules and that a just determination be made in every proceeding. *Fallen v. United States* 378 U.S. 139 (1964) (holding that a petitioner's untimely filing of a notice of appeal was excusable because prison authorities had delayed the mailing of his request to the Clerk of Court).

To require a petitioner to file a motion within a Rule's time limit where the Government is at fault for preventing the petitioner from doing so, undermines the Supreme Court's instruction that all Rules must be construed in an effort to secure fairness in the administration of justice. *Id.* at 142 (explaining

that the time limits set forth by the Federal Rules are not intended to be a rigid code with "an inflexible meaning irrespective of the circumstances").

Additionally, several courts have found that a ritualistic application of the time limits set forth under former Rule 35(a) is inappropriate in certain circumstances, especially where the delay in filing is not due to the defendant's actions. *See, e.g., Gov't of V.I. v. Gereau*, 603 F.2d 438, 442 (3d Cir. 1979) (holding that a failure to meet filing deadlines may be excused in certain "unique circumstances," such as "reliance on an affirmative statement by the court"); *Dodge v. Bennett*, 335 F.2d 657, 659 (1st Cir. 1964) (accepting motion where the delay was caused by prison authorities).

Likewise, in *Warren v. United States*, the court held that the time for filing a Rule 35 motion could be extended when the Government's actions caused the defendant's filing to be untimely. 358 F.2d 527 (D.C. Cir. 1965). The court found that the petitioner's motion should be accepted because the Government incorrectly advised the petitioner of the motion's due date. *Id.* at 530-31. The court explained that "the element of detrimental reliance on the acts of the Government officials" is "an important factor" when deciding whether "to charge the petitioner with delay." *Id.* at 531.

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page30 of 48

In determining a filings timeliness, courts can also take into consideration the date in which suppressed *Brady* is discovered by a petitioner. *See Stickler v. Green*, 527 U.S. 263, 289 (1999) (finding that a *habeas* petitioner showed cause to be excused from a procedural default where the Government withheld *Brady* evidence); *Daniels v. Uchtman*, 421 F.3d 490, 491-92 (7th Cir. 2005) (limitations period began to run in petitioner's *Brady* claim when a witness executed an affidavit recanting his testimony); *Slutzker v. Johnson*, 393 F.3d 373, 382 (3d Cir. 2004) (statute of limitations on *Brady* claim began to run when petitioner received previously undisclosed police reports).

Ultimately, justice would not be served if the Government was allowed to violate an important constitutional rule such as *Brady* and then attempt to minimize the harm done by obligating the defendant to detect the Government's breach within certain time limits. For the Court to hold otherwise would defeat the overarching purpose of the Federal Rules of Criminal Procedure for a "just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration...." Fed. R. Crim. P. 2.

Accordingly, Mr. Persico's motion pursuant to former Rule 35(a) should not be time-barred.

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page31 of 48

### C. **The Government's False Allegations and *Brady* Violations**

At sentencing, the Government attempted to improperly influence the sentencing judge by advocating a punishment that would be based upon allegations of Mr. Persico's involvement in violent crimes and murders, while at the same time, suppressing *Brady* evidence that would have disproven such allegations.

For example, the Government deliberately suppressed numerous FBI reports proving that Mr. Persico was neither the "boss" of the Colombo family from 1972 to 1985 nor a member of the "Commission" when an alleged vote was taken concerning the murder of Carmine Galante. The Government had, but withheld, both documentary and source evidence proving that the "Commission" recognized another individual as the "boss" of the Colombo family and Mr. Persico's role in the "Commission" was nonexistent during such timeframe.

The Government concealed information received by FBI agent DeVecchio that in 1973 the "Commission," led by Carlo Gambino, appointed Thomas Di Bella as the official "boss" of the Colombo family and did not request that he step down from that position until November 5, 1980, which was several months after Carmine Galante was murdered.(A.206-279).

In addition, the Government falsely claimed that Mr. Persico was responsible for the murder of Mary Bari, although FBI agent

DeVecchio and his informant Gregory Scarpa Sr., were later accused of being responsible for Bari's death.[11]

The Government also falsely accused Mr. Persico of sanctioning the killing of Thomas Spero,[12] despite FBI agent DeVecchio possessing evidence proving that alternative suspects were responsible for Spero's murder.(A.280). The Government later tried and convicted other individuals for ordering the murder of Thomas Spero--which was consistent with the withheld *Brady* evidence. *See United States v. Venero Mangano*, 90-Cr-446 (RJD), Trial Tr. at 1070-74 (May 6, 1991) (A.281-286) (cooperating witness Peter Savino testified that he and Jerry Papa were involved in the killing of Ralph and Thomas Spero); Letter from AUSA Charles E. Rose to Hon. Raymond J. Dearie (U.S.D.J., E.D.N.Y.) (April 26, 1991) (A.287) (Savino admitted, "he, Papa, and others were responsible for the Spero murders").

The Government's subsequent prosecution of the Spero murder [alleging Jerry Papa's involvement] proves that the suppressed *Brady* evidence in Mr. Persico's case was credible, and the district

---

[11] In 2006, the Brooklyn District Attorney's Office alleged that Bari's murder was committed by FBI agent DeVecchio and his informant, Gregory Scarpa. *See* Alan Feur, *For Ex-F.B.I. Agent Accused in Murder, a Case of What Might Have Been*, N.Y. TIMES (April 15, 2006) (reporting that DeVecchio was charged with "helping a Mafia informant kill at least four people").

[12] The Government falsely claimed that Mr. Persico ordered Genarro Langella to carry out Spero's execution because he had engaged in disloyal activities while Mr. Persico was imprisoned. *See* Gov't Sent. Memo at 23(A.51).

court was incorrect in its conclusory finding to the contrary. Order. at 23 (A.24) ("The Government had no *Brady* obligation to disclose documents that were part of the FBI's investigatory work and contained 'preliminary, challenged, or speculative information.'").

At no time did the Government disclose to Mr. Persico the exculpatory information it gathered regarding the murders of Galante, Bari, or Spero. Instead of fulfilling its ethical and legal obligations, the Government allowed, for the last thirty years, Mr. Persico to remain publicly accused and sentenced for murders that he did not commit.[13]

**D. Mr. Persico's Sentence was Imposed in an Illegal Manner**

A review of the sentencing record reveals that the Government's actions tainted Mr. Persico's sentencing proceeding, and prevented the sentencing court from basing its sentence upon truthful and mitigating factors.

---

[13] The animus towards alleged members of the "Mafia" has heightened to the point that the prospect of incarcerating innocent men has become conscionable to some Government officials. In addressing a committee assembled by the House of Representatives in 2001, former FBI Agent Paul Rico showed no remorse for the Government's systemic misconduct and mockingly stated "What do you want tears?" in response to the committee's questioning of whether he was sorry for the FBI's framing of several innocent men. *See FBI's role in convictions called 'shocking'*, Washington Post & Associated Press (July 27, 2007) (The district court found that the FBI knew its informant was lying when he identified four alleged members of the "Mafia" as being responsible for murder. Yet, the FBI still vouched for the witness' credibility and for years covered up the lie as the defendants tried to prove their innocence.).

Mr. Persico was denied an opportunity to mitigate his punishment, a requirement of fair play that the Government's *Brady* withholdings prevented him from doing. *See, e.g., Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records.").

In addressing Mr. Persico, the sentencing court focused its attention on the Government's false accusations concerning Mr. Persico's involvement in violence and murder. The sentencing judge's statements primarily concerned only Mr. Persico's role in utilizing murder and violence as a means to obtain monetary profits, even though his sentencing proceeding was to address only the extortion and labor bribery offenses for which he was convicted. *See* Sent. Tr. at 24-25 (A.139-140) (finding that Mr. Persico was "an upper member of this echelon, on the board of directors that lives, succeeds on murder, violence and threats of murder and violence.").[14]

The sentencing judge also expressly addressed Mr. Persico's alleged involvement in an uncharged conspiracy to kill Carmine Galante. The sentencing judge opined that "[a]ccording to Mr.

[14] In addressing Mr. Persico's co-defendant, Anthony Corallo, the sentencing judge similarly stated "you've really spent your life feeding on this community, based on killings and beatings and threats…." Sent. Tr. at 18 (A.133).

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page35 of 49

DeChristopher, you [Persico] sanctioned the use of killing for appropriate circumstances, although in the case of Mr. Galante you apparently voted against it according to what you told Mr. DeChristopher." *Id.* at 24 (A.139).

The detrimental effect of the Government's unconstitutional actions was further evident by the incorporation of these disputed allegations into Mr. Persico's PSR. The PSR referenced to the accusation that the "Commission resolved a leadership dispute within the Bonanno Family and other La Cosa Nostra Families, by authorizing the murder of Carmine Galante" and "certain other murders." PSI at 6-7 (A.91-92).

Notwithstanding these facts, the district court that reviewed Mr. Persico's Rule 35 motion somehow found that the sentencing judge did not consider Mr. Persico's involvement in any murders, including the killing of Carmine Galante. Order at 14 (A.15). ("Judge Owen did not find that Persico succeeded in being an upper member of the 'Commission' by engaging in acts of violence and threats of murder" and he made no finding and placed "no reliance on proof regarding the murder of Carmine Galante.").

The district court's finding is erroneous, because the Second Circuit previously found that the sentencing judge did, in fact consider Galante's murder as conduct relevant to the "Commission's"

affairs.[15] *Salerno*, 868 F.2d at 545-546 (Bright, J., dissenting) (reasoning that it was inappropriate for the sentencing judge to have considered the Galante murder given that the Government's proof rested upon nothing more than an analogy to the movie "The Godfather" and "a movie script does not constitute the kind of proof required to sentence men to prison for one hundred years").

Moreover, the Second Circuit has found that relief may be required where there is a likelihood that the sentencing judge was influenced by improper factors. *See McGee v. United States*, 462 F.2d 243, 246 (2d Cir. 1972) (holding that the record indicated that the sentencing judge may have been influenced by improper factors); *see also United States v. Harris,* 558 F.2d 366, 375 (7th Cir. 1977) (holding that a "showing of explicit reliance on improper factors or erroneous information has not invariably been held a prerequisite to sentence relief under *Townsend* and *Tucker*.").

The district court further contravened Second Circuit precedent in requiring Mr. Persico to directly prove that the sentencing judge relied upon the disputed allegations concerning

---

[15] The Second Circuit has explained, "when an appellate court has once decided an issue, the trial court, at a later stage of litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977; *see also United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)(finding that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court").

Case 16-2361, Document 22-1, 10/11/2016, 1880506, Page37 of 48

his involvement in murder and violence. Order at 18 (A.19) ("Because there is no indication in the record that Judge Owen relied on the disputed allegations, Persico's due process claim fails."). However, the record clearly shows that the sentencing judge relied upon the PSR when sentencing the defendants and did not strike any of the disputed allegations concerning the false murder accusations contained therein.[16] Sent. Tr. at 19 (A.134) (The judge stated, "based upon everything in this trial and in the presentence report...I am going to sentence you to a sentence that ends up cumulating [in] 100 years.").

Ultimately, there can be no dispute as to whether the sentencing judge may have been influenced by the Government's false murder accusations when imposing its punishment of 100 years' imprisonment for Mr. Persico and his co-defendants.

### E. Mr. Persico is Entitled to a New Sentencing Proceeding

The Supreme Court has made clear that due process requires that a court impose a sentence that is based upon a truthful and complete account of the defendant's criminal history. *Townsend v. Burke*, 334 U.S. 736 (1948)

The Court explained that a sentence based upon the sentencing judge's consideration of materially inaccurate information is

[16] In addressing Mr. Persico's co-defendant, Ralph Santoro, the sentencing judge credited the Government's accusations: "I am going to sentence you to a hundred years because I find you and Mr. Corallo...have been partners for years in loansharking, conspiracy to murder, authorizing murder, and violence." *Id.* at 53 (A.168).

inconsistent with due process. *Id.* at 741. The Court found that "it is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process." *Id.*

The Second Circuit has also held that due process requires that a sentence be based upon a truthful and complete account of a defendant's criminal history. *United States v. Stein*, 544 F.2d 96, 101 (2d Cir. 1976) (vacating a sentence based on "erroneous assumptions or information that was materially incorrect"). In *United States v. Malcom*, the Court held that sentencing requires an "appropriate, just and enlightened" determination by the judge and "misinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." 432 F.2d 809, 816 (2d Cir. 1970).

Here, Mr. Persico's sentencing proceedings lacked due process and suffered the same constitutional defects outlined in *Townsend* and *Malcom*. The sentencing court formed its punishment upon materially false information that Mr. Persico had no opportunity to correct due to the Government's *Brady* violations.

Had Mr. Persico received all *Brady* information, he could have demonstrated that the Government's sentencing accusations were unreliable and unworthy of the judge's consideration. It is also likely that the sentencing judge would have rejected all of the Government's accusations had it known the truth about the identity and reliability of Mr. Persico's key accusers [Lindley DeVecchio, Gregory Scarpa Sr., and Joseph Pistone] whom had engaged in undisclosed acts of violence, conspiracy to murder, and murder.

As a result of the Government's *Brady* withholdings and submission of false information concerning Mr. Persico's criminal history, the sentencing proceeding was inconsistent with rudimentary demands of fair procedures. The Government's actions diminished the effectiveness of Mr. Persico's sentencing arguments and undermined the integrity of the sentencing process.

Accordingly, Mr. Persico's sentence was imposed in an illegal manner warranting relief under Former Rule 35(a).

## II. THE COURT SHOULD FIND THAT MR. PERSICO'S SENTENCE IS ILLEGAL PURSUANT TO FORMER RULE 35(A), AS VIOLATING THE CONSTITUTION'S SUBSTANTIVE GUARANTEES BECAUSE HIS EXCESSIVE PUNISHMENT OF 100 YEARS' IMPRISONMENT WAS BASED UPON THE SENTENCING JUDGE'S CONSIDERATION OF FALSE AND INCOMPLETE INFORMATION RESULTING FROM THE GOVERNMENT'S UNCONSTITUIONAL ACTIONS.

### A. Overview

Mr. Persico's sentence is illegal because the term of his punishment violates the Constitution's substantive guarantees. Mr. Persico was subjected to an excessive punishment because of the

sentencing judge's consideration of false information and its failure to contemplate mitigating evidence due to the Government's *Brady* suppressions.

The Constitution's substantive guarantees require that the goal of sentencing is to have the Court impose punishment that fits the individual defendant and the crime for which he has been convicted. However, that goal is not served when a sentencing judge relies on a false understanding of a defendant's criminal history and is prevented from considering mitigating evidence relevant to the determination of punishment.

### B. The Constitution's Substantive Guarantees Require that a Defendant's Sentence be Reasonable and Proportionate

A punishment formed upon the foundation of a false and incomplete record is illegal because it violates the Constitution's substantive guarantee that a defendant will not be subjected to punishment that is either disproportionate or excessive in comparison to sentencing ranges afforded to other offenders who are similarly situated.

When a sentence is based upon false and incomplete information, the factual foundation on which the sentence is based upon is substantively inaccurate. The scope of sentencing options available for the defendant is altered to his disfavor and the range of punishments for which the sentencing judge incorrectly believes to be "reasonable" is heightened.

The range of sentencing options is also increased when the Government withholds mitigating *Brady* evidence from a sentencing judge's consideration. The Government's withholding of mitigating evidence not only affects the fairness of the sentencing process but substantively alters the range of sentencing options available by subjecting the defendant to a greater penalty than would be permitted had the judge known of the withheld information.

*In United States v. Malcolm*, the Second Circuit emphasized that *Brady* disclosures are one of the most important functions of the prosecutor "to make sure that all information in his possession material to punishment and favorable to the accused is presented to the court and that the sentence is not based on mistakes of fact or faulty information." 432 F.2d 809, 818 (2d Cir. 1970) (*citing Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The Court explained that "[i]f justice is to be done, a sentencing judge should know all the material facts," and "[f]air administration of justice demands that the sentencing judge will not act on surmise, misinformation and suspicion but will impose sentence with insight and understanding." *Id.* at 819.

A sentence that is tainted by *Brady* withholdings and based on a false and incomplete account of the defendant's history is constitutionally invalid, irrespective of whether the punishment imposed was in excess of a statutory provision or otherwise

contrary to the applicable statute.[17] *See Hill v. United States*, 368 U.S. 424, 430 (1962) (stating that a sentence is also illegal if "the terms of the sentence itself were illegal or constitutionally invalid in any other respect"); *United States v. Johnson*, 988 F.2d 941, 943 (9th Cir. 1993) (noting that an "illegal sentence" includes one which "is in violation of the constitution").

Furthermore, the Supreme Court has held that a sentence could be "illegal" in certain situations even if the punishment proscribed is below the statutory maximum and not beyond the State's power to impose. *See Montgomery v. Louisiana*, 136 S.Ct. 718 (2016) (finding that a Court's consideration of mitigating evidence before sentencing a juvenile to life imprisonment without parole is a substantive requirement under the Constitution); *Eddings v. Oklahoma*, 455 U.S. 104 (1982) (finding that the Eighth Amendment prohibits the imposition of the death penalty absent individualized consideration of relevant mitigating evidence); *Lockett v. Ohio*, 438 U.S. 586 (1978) (holding that the Ohio death penalty statute was unconstitutional because it did not permit the sentencer to consider certain mitigating factors).

[17] The district court erred in finding that these factors only relate to whether a sentence is imposed in an illegal manner. *See* Order at 17(A.18)("Persico's claim under former Rule 35(a) that the sentencing judge relied on inaccurate information in violation of the Due Process Clause is plainly a claim that his sentence was imposed in an illegal manner.").

In *Montgomery v. Louisiana*, the Supreme Court expressly rejected the State's contention that a particular sentence can only be "illegal" as violating the Constitution's substantive guarantees if it is in excess of a statutory provision or otherwise contrary to the applicable statute provision. The Court held that a sentence can be illegal if it requires the enforcement of a penalty that the Constitution forbids, finding "a conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void."[18] *Montgomery*, 136 S.Ct. at 731.

Several Justices of the Supreme Court have also expressed contempt for lower courts attempting to limit constitutional challenges to a punishment's reasonableness. Specifically, the Justices explained that at no time during the Supreme Court's history has it ever held that the Constitution permits "otherwise unreasonable sentences supported by judicial fact-finding, so long as they are within the statutory range." *See Jones v. United States*, 135 S.Ct. 8 (2014) (Scalia, J., joined by Thomas, J., and Ginsburg, J., dissenting from denial of certiorari) ("The Courts of Appeals have uniformly taken our continuing silence to suggest that the Constitution does permit otherwise unreasonable sentences

---

[18] In this regard, the Court explained that there is no judicial "authority to leave in place a conviction or sentence that violates a substantive rule," which "set[s] forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, 136 S. Ct. at 723-724.

supported by judicial fact-finding, so long as they are within the statutory range" [and] "this has gone on long enough.").

The Constitution thus requires a finding that a sentence is "illegal" when resulting from the taint of *Brady* violations and supported only by a judge's consideration of false and incomplete information concerning a defendant's criminal history. To hold otherwise, would ignore the Constitution's substantive guarantee that a punishment be fair and reasonable.

**C. Mr. Persico's Sentence of 100 years' Imprisonment Violates the Constitution's Substantive Guarantees**

The record reflects that the sentencing judge's consideration of improper factors worked to substantively enhance Mr. Persico's punishment. The sentencing judge imposed a punishment that was not reflective of the crimes for which Mr. Persico was convicted, nor contemplative of mitigating evidence that should have been available at the time of sentencing had the Government complied with its *Brady* obligation.

The sentencing court admitted to forming its punishment of 100 years' imprisonment that was "beyond" the range of usual sentencing options: "[I]n fashioning a sentence generally one starts off with sentencing the man. In this case I have to go beyond that because what has to be sentenced is the overall crime. And I have to fashion something that fits that." Sentencing Tr. at 18.

The "overall crime" considered by the sentencing judge had nothing to do with the non-violent offenses for which Mr. Persico was convicted, but instead involved the false allegations advocated by the Government and contained in the PSR.(A.36,47-53,91-92,106,111-114). The court made erroneous findings that Mr. Persico was the "boss" of the Colombo family since 1972 and had participated in a number of uncharged acts of violence and murder, including participating with other "Commission" members to kill Carmine Galante.(A.137-140).

The sentencing judge's findings resulted from the Government's withholding of *Brady* evidence which would have disproven these allegations and thus mitigated Mr. Persico's sentencing culpability. Therefore, the specific *Brady* evidence withheld from the sentencing judge's consideration was also substantively material to Mr. Persico's punishment, which concerns the legality of the sentence itself.

In light of these factors, the calculated punishment imposed upon Mr. Persico was much higher than necessary to satisfy the goal of sentencing. A punishment of 100 years' imprisonment was unreasonable in Mr. Persico's case because it was greater than necessary and disproportionate to sentences that would be imposed upon other offenders convicted of similar extortion and labor bribery offenses.

While a sentence of the statutory maximum is "permitted" to address the most egregious of criminal offenders, a sentencing judge is constitutionally required to impose a sentence below that statutory maximum when individual circumstances require. This fundamental obligation ensures that "the punishment should fit the offender and not merely the crime," and the most "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 246-247 (1949); *see also Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.").

Here, the sentencing process was not particular to Mr. Persico because of the sentencing court's utilization of false information and its failure to consider mitigating evidence due to the Government's violation of its *Brady* obligation. By using an improper and incomplete formula of factors, the court calculated a higher sentencing range than necessary in the ordinary case, and imposed a punishment that violates the Constitution's substantive guarantees.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court reverse the district court's denial of Mr. Persico's motion for correction of his sentence pursuant to former Rule 35(a) and order that a new sentencing proceeding be conducted.

Dated: October 09, 2016
White Plains, New York

Respectfully Submitted,

/s/Anthony DiPietro
Anthony DiPietro, Esq.
Law Office of Anthony DiPietro
15 Chester Avenue
White Plains, New York 10601

*Attorney for Carmine Persico*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,687 words.*

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using Microsoft Word in 12point Courier New font.

/s/Anthony DiPietro
Anthony DiPietro, Esq.

*Attorney for Carmine Persico*

*Microsoft Word Full Document Count:
(includes: footnotes and endnotes)
Pages: 47
Words: 9,687
Characters (no spaces): 52,409
Characters (with spaces):62,200
Paragraphs: 263
Lines: 1,273

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

United States of America

v.

Carmine Persico

## CERTIFICATE OF SERVICE*

Docket Number: 16-2361-cr

I, Anthony DiPietro, Esq., hereby certify under penalty of perjury that
(print name)

on October 9, 2016, I served a copy* of Mr. Persico's Brief and Appendix
(date)

(list all documents)

by (select all applicable)**

___ Personal Delivery    ___ United States Mail    + Federal Express or other Overnight Courier

___ Commercial Carrier    ___ E-Mail (on consent)

on the following parties:

| | Name | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| *One Copy to: | AUSA Matthew Podolsky | 1 St. Andrew's Plaza | New York | NY | 10007 |
| *Six Copies to: | Clerk of Court (Second Circuit) | 40 Foley Square | New York | NY | 10007 |
| | | | | | |
| | | | | | |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

October 9, 2016
Today's Date

[signature] A. DiPietro
Signature

Certificate of Service Form (Last Revised 12/2015)