# 16-2361-cr

==========================================================

In the
## United States Court of Appeals
### For the Second Circuit

**Docket No. 16-2361**

UNITED STATES OF AMERICA,

*Appellee,*

-vs-

CARMINE PERSICO,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF OF DEFENDANT-APPELLANT CARMINE PERSICO

Anthony DiPietro, Esq.
Law Office of Anthony DiPietro
15 Chester Avenue
White Plains, NY 10601
(914) 948-3242

*Attorney for Defendant-Appellant Carmine Persico*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ii

PRELIMINARY STATEMENT ........................................1

ARGUMENT ........................................1

I. THE GOVERNMENT BREACHED ITS *BRADY* OBLIGATION ................1

II. MR. PERSICO'S CLAIM THAT HE WAS SENTENCED IN AN ILLEGAL MANNER IS NOT TIME-BARRED UNDER FORMER RULE 35(a) ..............5

III. THE GOVERNMENT OFFERS NO ARGUMENT TO REBUT MR. PERSICO'S CLAIM THAT HE WAS SENTENCED IN AN ILLEGAL MANNER ..............10

IV. MR. PERSICO'S SENTENCE OF 100 YEARS' IMPRISONMENT IS ILLEGAL ........................................11

V. MR. PERSICO'S *BRADY* CLAIMS ARE PROPER UNDER FORMER RULE 35(a) ........................................13

VI. MR. PERSICO'S MOTION CANNOT BE DENIED ON PRUDENTIAL GROUNDS ........................................16

CONCLUSION ........................................17

CERTIFICATE OF COMPLIANCE ........................................18

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Boyette v. Lefevre*, 246 F.3d 76 (2d Cir. 2001) .................4

*Cone v. Bell*, 556 US 449 (2009) ...............................15

*DiSimone v. Phillips*, 461 F.3d 181 (2d Cir. 2006) ..............4

*People v. Devecchio*,
2007 N.Y. Misc. LEXIS 7827 (N.Y. Sup. Ct. 2007) ................3

*Townsend v. Burke*, 334 U.S. 736 (1948) ........................10

*United States v. Brown*, 1990 WL 95398 (9th Cir. 1990) ......14,15

*United States v. Finkielstain*,
293 F. App'x 62 (2d Cir. 2008) .................................16

*United States v. Jernigan*,
492 F.3d 1050 (9th Cir. 2007) ..................................4

*United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970) .........10

*United States v. Persico*,
1993 U.S. Dist. LEXIS 13640 (S.D.N.Y. 1993) ....................7

*United States v. Salerno*, 946 F.2d 172(2d. Cir. 1992) ..........7

*United States v. Stein*, 544 F.2d 96 (2d Cir. 1976) ............10

## PRELIMINARY STATEMENT

Appellant Carmine Persico respectfully submits this brief in reply to the Government's answering brief ("Gov't Br."). In this reply, Mr. Persico further demonstrates that he is entitled to sentencing relief under former Rule 35(a), because the term of his punishment violates both the Constitution's procedural and substantive guarantees. This reply brief addresses only those contentions in the Government's brief that warrant a response. The contentions not addressed are sufficiently met by the facts and argument presented in Mr. Persico's opening brief ("Br.").

## I. THE GOVERNMENT BREACHED ITS *BRADY* OBLIGATION

The Government contends that the district court was correct in finding that it did not violate its *Brady* obligation, because it was not required to turn over "undisclosed documents that were part of the FBI's investigatory work and contained 'preliminary, challenged or speculative information....'"[1] Gov't Br. at 22.

However, the Government neglects that neither the law nor facts support the district court's findings. Specifically, the

---

[1] The district court made its finding without conducting any inquiry into the veracity of the information contained within the undisclosed documents or ascertaining the identities of the sources [at least four different sources] that had provided such information.

Government explicitly stated within the undisclosed documents that the information it received was of high quality and from credible sources. The Government also utilized the information to its favor when conducting criminal prosecutions and in its sworn applications to the courts in order to establish the probable cause needed to obtain Title III intercepts, indictments, and arrest warrants.

For example, some of the undisclosed documents contain references that at least one Government source provided such "high quality information" that it directly led to "17 affidavits in support of Title III intercepts, and 50 re-authorizations of these intercepts." (Appendix at 290-291 (hereinafter "A")).

In another undisclosed document, it is reported that the Government's source provided the information used as the probable cause needed to obtain Title III intercepts against Mr. Persico's co-defendant [Anthony Salerno], and "as part of the PC [probable cause] which resulted in the indictment and arrest of the heads of all the LCN Families [which included Mr. Persico's arrest]." (A. 295).

Other undisclosed documents also reveal that the FBI was receiving similarly consistent information from multiple undercover sources. For example, the FBI reported that several undercover sources had informed the Government that the

"Commission" appointed Thomas Dibella [not Carmine Persico] as the "boss" of the Colombo family and as a sitting member of the "Commission" (A. 235-236, 240). Government sources also reported to the FBI that Dibella's relinquishment of such roles was not until 1980 [after Carmine Galante had been murdered]. (A.275)

Furthermore, the Government also prosecuted several individuals for the murder of Thomas Spero based upon a theory consistent with the information contained in the documents that had been suppressed. *See*, Br. 26 (citing to, among other things, the Government's offer of proof in *United States v. Venero Mangano*, 90-Cr-446 (RJD), where it claimed that Jerry Papa and others had murdered Ralph and Thomas Spero). Likewise, the Brooklyn District Attorney's Office prosecuted the case FBI agent [Lindley DeVecchio) for his role in assisting informant Gregory Scarpa Sr.,[2] in the murder of Mary Bari. *See*, *People v. DeVecchio*, 2007 N.Y. Misc. LEXIS 7827 (N.Y. Sup. Ct. 2007).

Overall, there can be no dispute that the Government had an absolute *Brady* obligation to disclose evidence that exculpated

[2] The Government often praised Scarpa for assisting in its investigation of the "Commission." On multiple occasions, FBI agent DeVecchio requested that Scarpa be paid large sums of taxpayer monies for the information he provided, and even lauded Scarpa as the key source in helping the FBI bring about the "Commission" case. *See*, Lin DeVecchio and Charles Brandt, *We're Going to Win This Thing: The Shocking Frame-up of a Mafia Crime Buster* 124, 182 (2011) ("We couldn't have done it without Scarpa," and "without Greg Scarpa, there would have been no Mafia Commission Case, and where would we all be now?").

Mr. Persico of the murders and violence in which it accused him of committing. *See*, Br. 11-15 (*citing* A. 206-276) (discussing the withheld *Brady* evidence that demonstrated the falsity of the murder accusations which served as the predicate for Mr. Persico's de facto 100 year sentence, and established that he was neither the "boss" of the Colombo family, nor a member of the "Commission" from 1972 to 1985).

The Government's obligation under *Brady* required its disclosure of witness statements claiming that alternative suspects had been responsible for such murders, because information suggesting alternative motives and suspects is of inherent value to the defense. *See, e.g., Boyette v. Lefevre*, 246 F.3d 76, 91 (2d Cir. 2001); *United States v. Jernigan*, 492 F.3d 1050, 1056-57 (9th Cir. 2007) (en banc) ("Withholding knowledge of a second suspect conflicts with the Supreme Court's directive that the criminal trial, as distinct from the prosecutor's private deliberations, be preserved as the chosen forum for ascertaining the truth about criminal accusations.").

Moreover, the Government was required to disclose such exculpatory information, even if it considered such information to be "speculative." *See., e.g., DiSimone v. Phillips*, 461 F.3d 181, 195, (2d Cir. 2006) ("[I]f there were questions about the reliability of the exculpatory information, it was the prerogative of the defendant and his counsel--and not of the

prosecution--to exercise judgment in determining whether the defendant should make use of it.”).

In sum, the Government cannot escape its *Brady* obligation by offering a conclusory statement that it believed all of the exculpatory information contained in the undisclosed documents was too “speculative” to have warranted its disclosure; especially when, the Government used the inculpatory information contained in those very same documents to establish the probable cause it needed in numerous sworn requests for Title III intercepts, indictments, and arrest warrants.

## II. MR. PERSICO'S CLAIM THAT HE WAS SENTENCED IN AN ILLEGAL MANNER IS NOT TIME-BARRED UNDER FORMER RULE 35(a)

The Government incorrectly argues that Mr. Persico has waived the right to argue that Rule 35(a)’s time limits should be excused by the Government’s failure to disclose *Brady* evidence. Gov’t Br. 14. The Government neglects that both parties litigated such issue before the District Court, and therefore the issue is proper for this Court’s consideration. *See*, e.g., Persico Reply at 6, *United States v. Salerno*, 85-Cr-139 (KTD)(Doc No. 363)(July 13, 2015)(“[T]he Government futilely suggests that Mr. Persico’s claims are...precluded by the 120-day time limit....Mr. Persico must be afforded the opportunity to have his claims adjudicated by the Court, because his twenty-nine year call for justice was hampered by the Government’s

reckless and intentional suppression of *Brady* evidence."); *Id.* at 5 ("[T]he Government's attempt to fault Mr. Persico for failing to bring his claims sooner is meritless. The Government's long-lasting disregard of its *Brady* obligation interfered with Mr. Persico's ability to...sooner remedy the illegality of his sentence....The Government should not be permitted to use its wrongdoing as a shield to bar Mr. Persico's claims...").

In addition, the Government misinforms this Court that Rule 35(a)'s 120-day limitation should not be tolled in Mr. Persico's case, because the issues presented were previously litigated and adjudicated by the courts to his disfavor. Gov't Br. 12,13,15.

In support of its errant contention, the Government references the following proceedings:

- [I]n a motion for a new trial, Persico offered much the same argument that he presents here--that he was sentenced based on false information in the Government's sentencing memorandum regarding his involvement, among other things, in the killing of Thomas Spero. That argument was rejected some 23 years ago. Gov't Br. 12-13 (*citing United States v. Persico*, 1993 WL 385799, at *9 (S.D.N.Y. 1993);

- Not only was Mr. Persico able to contend that the information contained in the Presentence Investigation was inaccurate at the time, but in fact he made much the same arguments[3] in his direct appeal, and the Court rejected those arguments. Gov't Br. 15 (*citing* Salerno, 868 F.2d at 541-42).

---

[3] Notably, the Government first asserted that Mr. Persico's arguments were only substantially similar to those previously raised in prior phases of this case. Gov't Br. 11.

The Government fails to tell this Court that the new trial motion it has cited--wherein Mr. Persico previously proclaimed his innocence in the killing of Thomas Spero and others--was actually filed in a different case and resolved by the court based upon its finding that it had not relied upon any uncharged murder accusations when determining Mr. Persico's sentence. *United States v. Persico*, 1993 U.S. Dist. LEXIS 13640, at *31-32 (S.D.N.Y. 1993).

The Government also fails to mention that the court in *Persico* only imposed a sentence of thirty-nine years' imprisonment, although the proof submitted at trial was substantially similar to the evidence offered by the Government in the "Commission" case. *See United States v. Salerno*, 964 F.2d 172, 179 (2d Cir. 1992)(noting that it "is undoubtedly so" that the conduct for which Mr. Persico was convicted in the "Commission" trial was largely proven at the *Persico* trial, resulting also in a considerable duplication of evidence at the two trials).

Of significance, the court in *Persico* did not find that a punishment of 100 years' imprisonment was necessary, nor did it repeatedly make reference to Mr. Persico's alleged involvement in uncharged murders and violence when imposing punishment. *Id.* at *32 (noting that the court told Mr. Persico his sentence would be solely based "on what he was convicted.").

Overall, the circumstances in this case are markedly different from what transpired in *Persico*. Here, the sentencing court did explicitly claim it was fashioning a punishment that went beyond sentencing the "man" (A. 133), and it accused Mr. Persico of being "an upper member of this echelon, on the board of directors that lives, succeeds on murder, violence and threats of murder and violence." (A. 137-140). The sentencing judge also stated that Mr. Persico had sanctioned "the use of killing for appropriate circumstances" (A. 137-140), and it took consideration of his alleged role in Carmine Galante's murder, among the other falsely alleged murders contained in the Government's sentencing submissions and joint section of Mr. Persico's Presentence Report. (A. 47-53, 91-92, 106, 111-114, 137-140).

There is no doubt that Mr. Persico's current claims were not previously litigated, because the *Brady* evidence presented was not discovered until several decades after his conviction became final.[4] No court could have previously decided the issues presented by Mr. Persico in this proceeding, because at no time, has the Government ever disclosed any of the *Brady* evidence

[4] The Government's argument that these matters were previously litigated is truly baseless. The Government has already conceded that it never disclosed the *Brady* information that Mr. Persico presents in this proceeding because it was deemed "speculative"; thereby making it impossible for his *Brady* claim to have been previously litigated and decided by any court to his disfavor.

proving that Mr. Persico was not involved in the uncharged murders for which he was accused of committing.

Ultimately, the prior instances in which Mr. Persico challenged his sentence lend no support to the Government's contention that his instant claims are duplicative of claims previously presented. Such prior proceedings only prove that the Government was well aware that the uncharged murder accusations were material to the punishment imposed by the sentencing judge in the "Commission" case, and of importance to legal claims that were being considered by the courts at such time. And even with knowledge of the issue's importance, the Government continued to suppress *Brady* evidence throughout all prior proceedings, thereby forcing both the sentencing judge and this Court to conduct a review of Mr. Persico's challenges without the benefit of an accurate and complete record.

Under these circumstances, the Government has forfeited its right to argue that Mr. Persico's claim is untimely. The Government's suggestion that it should now benefit from Rule 35(a)'s time-limits is without merit; the Government should not be rewarded for its success in knowingly withholding information from the parties that it was ethically and constitutionally required to disclose during prior judicial proceedings and before Rule 35(a)'s time-limits had expired.

## III. THE GOVERNMENT OFFERS NO ARGUMENT TO REBUT MR. PERSICO'S CLAIM THAT HE WAS SENTENCED IN AN ILLEGAL MANNER

The Government offers no argument to rebut Mr. Persico's claim that his sentence of 100 years' imprisonment was imposed in an illegal manner and it should be corrected. *See, e.g.*, *Townsend v. Burke*, 334 U.S. 736 (1948); *United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970); *United States v. Stein*, 544 F.2d 96 (2d Cir. 1976).

Specifically, the Government does not argue that it had not suppressed the exculpatory evidence in which Mr. Persico presents in this proceeding, nor does it contend that the information it had provided to the sentencing judge regarding Mr. Persico's involvement in several uncharged murders and violence was actually true.

In fact, the Government cannot argue that the information it submitted to the sentencing judge was true in its entirety, because, in at least two instances, other individuals were subsequently prosecuted for the murders in which Mr. Persico was accused of committing. Br. 14, 26 (discussing subsequent prosecutions in which the Government alleged that other individuals had been responsible for murdering Thomas Spero and Mary Bari).

Accordingly, this Court should grant Mr. Persico's request for a new sentencing proceeding.

**IV. MR. PERSICO'S SENTENCE OF 100 YEARS' IMPRISONMENT IS ILLEGAL**

The Government incorrectly states that Mr. Persico's sentence cannot be illegal, because "Persico does not contend, nor could he...that Judge Owen considered an improper factor...." Gov't Br. 19.

As evidenced throughout his opening brief, Mr. Persico repeatedly contends that the sentencing judge considered improper factors when deciding his punishment.[5] Br. 19 ("The sentencing judge relied upon the Government's unsupported and false allegations regarding Mr. Persico's criminal history..."); Br. 33 (Mr. Persico was subjected to an excessive punishment because of the sentencing judge's consideration of false information..."); Br. 38 ("The record reflects that the sentencing judge's consideration of improper factors worked to substantively enhance Mr. Persico's punishment.").

In addition, Mr. Persico's opening brief cites to numerous instances in which the record demonstrates that the sentencing judge took consideration of improper factors, such as its expressive addressing of Mr. Persico's involvement in uncharged murders and violence. Br. 8-9, 28-29 (reporting the sentencing judge's statements concerning Mr. Persico's involvement in

[5] It is truly a mystery how the Government can make such a representation to this Court when the sentencing judge's improper consideration of false accusations concerning Mr. Persico's involvement in uncharged murders and violence is central to each claim raised in this proceeding.

uncharged murders and violence); Br. 28, fn. 14 (reporting the sentencing judge's statements that Mr. Persico's co-defendant had spent his life participating in uncharged "killings, beatings, and threats..."); Br. 29, 31 (reporting the sentencing judge's explicit reliance upon "everything" in this trial and in the presentence report [which contained accusations against all the defendants [including Mr. Persico] that they were involved in sanctioning uncharged murders]); Br. 31, fn. 16 (reporting that the sentencing judge stated it was sentencing two of Mr. Persico's co-defendants to 100 years' imprisonment, because of, among other things, their alleged engagement in uncharged acts of "conspiracy to murder, authorizing murder, and violence"); Br. 38 (reporting the sentencing judge's statement that it was fashioning a sentence not to address the "man" but to punish the "overall crime," which included uncharged conduct).

Aside from explicitly arguing that the sentencing judge considered improper factors, Mr. Persico has also advanced that a sentence tainted by *Brady* withholdings and based on a false account of a defendant's history is constitutionally invalid as violating the Constitution's substantive guarantees.

Instead of addressing Mr. Persico's argument and supporting case law, Br. 34-40, the Government tries to invoke Rule 35(a)'s time limitation by arguing that it believes Mr. Persico's claim

is "no different than his contention that he was sentenced in an illegal manner." Gov't Br. 18.

The Government's attempt to invoke Rule 35(a)'s time limitation by classifying Mr. Persico's claim as duplicative is not only unavailing, but futile in light of the fact that a Pre-Guidelines sentence can be deemed "illegal" if this Court finds that the sentencing judge did consider an improper factor [which is an issue central to Mr. Persico's claim].[6]

## V. MR. PERSICO'S *BRADY* CLAIMS ARE PROPER UNDER FORMER RULE 35(a)

The Government incorrectly argues that Mr. Persico's *Brady* claims are not proper under Former Rule 35(a), because his claims "go directly to the proof put on at trial and do not go to the validity of the sentence...." Gov't Br. 20.

The *Brady* claims presented by Mr. Persico cannot be considered an attempt to review errors occurring at trial, because the Government's attempt to hold Mr. Persico accountable for uncharged murders did not first arise until the time of his sentencing.

Notably, the Government does not provide a single citation to the trial record or an example to support its contention that

[6] Notably, the Government contends that the district court was correct in finding that a Pre-Guidelines sentence can be reviewed as being illegal if it is beyond statutory limits or if it appears that the sentence was based upon the judge's consideration of an improper factor. Gov't Br. 19.

Mr. Persico's *Brady* claims are related to "the proof put on at trial." See Gov't Br. 19-22. In fact, the Government cannot provide such support for its contention, because the accusations concerning Mr. Persico's role in uncharged murders and violence was not an issue at the time of trial.

To date, Mr. Persico has never been charged with or convicted of participating in any murder. During trial, there was no offer of proof concerning Mr. Persico's direct participation in the uncharged murders and violence alleged by the Government at the time of his sentencing. In fact, the trial record is devoid of proof pertaining to these murders; the trial record contains no reference to the accusation that Mr. Persico had ordered the killings of Thomas Spero, Mary Bari, and others.

Furthermore, the Government's reliance upon an "unpublished disposition" by the Ninth Circuit is unavailing, because it does not support the Government's contention that a *Brady* claim can never serve as a basis for relief pursuant to Former Rule 35(a). Gov't Resp. at 21 (*citing United States v. Brown*, 1990 WL 95398 (9th Cir. 1990)).

Instead, the court in *Brown* explained that the petitioner's specific *Brady* claims were not cognizable under Rule 35, because they did "not concern the legality of the sentence itself; rather, they concern[ed] alleged violations which [we]re not disclosed by the record and which occurred, if at all, prior to

sentencing." *Id.* at *4. And unlike the petitioner in *Brown*, the alleged violations in Mr. Persico's case occurred only at the time of sentencing, and the *Brady* claims presented in his Rule 35(a) motion only attack the legality of his sentence.

Moreover, the Government neglects that when considering *Brady* claims, the Supreme Court has explained that the court is obligated to "distinguish between the materiality of the evidence with respect to guilt and the materiality of the evidence with respect to punishment."[7] *Cone v. Bell*, 556 US 449 (2009). The Court observed that a lower court's failure to consider *Brady* evidence in regard to sentencing is "an omission we find significant" because although "[e]vidence that is material to guilt will often be material for sentencing purposes as well; the converse is not always true, however, as *Brady* itself demonstrates." *Id.*

In this case, the omission by the district court not to properly consider the withheld *Brady* evidence with respect to what transpired at sentencing is significant. The cumulative effect of the evidence suppressed during Mr. Persico's

[7] Notably, the petitioner in *Cone* did not discover the suppressed evidence until ten years after his sentence was imposed. And without even consideration of the passage of time since sentencing, the Supreme Court found that "because the evidence suppressed at Cone's trial may well have been material to the jury's assessment of the proper punishment in this case, we conclude that a full review of the suppressed evidence and its effect is warranted." *Id.* at 475.

sentencing proceeding may well have been material to the sentencing judge's assessment of whether 100 years' imprisonment was truly a proper punishment.

**VI. MR. PERSICO'S MOTION CANNOT BE DENIED ON PRUDENTIAL GROUNDS**

The district court's summary affirmance of Mr. Persico's sentence is not located well within the range of permissible decisions. The record overwhelmingly proves that Mr. Persico's punishment of 100 years' imprisonment was based upon the sentencing judge's improper consideration of false information concerning Mr. Persico's involvement in uncharged murders and violence, and was imposed without the sentencing judge's consideration of mitigating *Brady* evidence that had been suppressed by the Government.

The Government's reliance on the Second Circuit's decision in *United States v. Finkielstain*, 293 F. App'x 62 (2d Cir. 2008) does not support its request that Mr. Persico's motion be denied for "prudential considerations." Gov't Br. 12-13.

In *Finkielstain*, the court did not find that prudential considerations would always support a district court's refusal to review a sentence. Of significance, the court did not address the situation where a petitioner, like Mr. Persico can demonstrate that he was deprived of an ample opportunity to challenge the legality of his sentence due to the Government's unconstitutional transgressions.

Unlike Mr. Persico, the petitioner in *Finkielstain* was not confronted by the Government's concealment of *Brady* evidence that deprived him of a reasonable opportunity to previously challenge the legality of his sentence during the years between his sentence and motion.

Overall, the facts and circumstances present in Mr. Persico's case warrant this Court's granting of a new sentencing proceeding, because even the strongest interest in the finality of judgments does not require the continued imprisonment of one who is actually innocent of the crimes for which he has been punished.

**CONCLUSION**

For the reasons set forth herein and in Mr. Persico's opening brief, this Court should grant Mr. Persico's request for correction of his sentence pursuant to former Rule 35(a).

Dated: January 22, 2017
White Plains, New York

Respectfully Submitted,

/s/Anthony DiPietro

Anthony DiPietro, Esq.
Law Office of Anthony DiPietro
15 Chester Avenue
White Plains, New York 10601

*Attorney for Carmine Persico*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,030 words.*

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using Microsoft Word in 12point Courier New font.

/s/Anthony DiPietro
Anthony DiPietro, Esq.

*Attorney for Carmine Persico*

*Microsoft Word Full Document Count:
(includes: footnotes and endnotes)
Pages: 20
Words: 4,030
Characters (no spaces): 22,067
Characters (with spaces): 26,264
Paragraphs: 116
Lines: 540